# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Roadget Business Pte. Ltd., <br> Plaintiff, <br><br> v. <br><br> The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint, <br><br> Defendants. | Case Number: 24-cv-4935 <br><br> Judge Manish S. Shah |

## DEFENDANTS' MOTION TO MODIFY THE ASSET RESTRAINT

NOW COME Defendant Nos. 1, 2, 4, 5, 9, 11, 12, 13, 14, 15, and 16, respectively, Yohad, VolcanoPJ, Happy Sleeping, AINK, UNYS, The One Queen, TMsyfzc, jin Wang, March th, Shenghong Pajama Clothing Store, and MOKAJUN ("Defendants"), through counsel, and respectfully request that the Court reduce the asset restraints imposed on their businesses to revenues on accused sales.

## BACKGROUND

Plaintiff Roadget Business Pte. Ltd. ("Plaintiff" or "Roadget") has now filed nine Schedule A copyright infringement actions in this District against online retail stores operating on the TEMU.com e-commerce platform ("Temu"). *See, e.g.,* Nos. 23-

cv-16262, 23-cv-17036, 24-cv-115, 24-cv-607, 24-cv-1174, 24-cv-2015, 24-cv-2536, 24-cv-3139, and 24-cv-4935 (instant action). In each case, Plaintiff alleges that defendants are promoting, advertising, distributing, offering for sale, or selling products via online selling platforms that violate Plaintiff's intellectual property rights. And in all nine cases, Plaintiff has immediately sought an *ex parte* TRO (under seal) to freeze all financial accounts owned by the defendants.

But in six of the aforementioned cases, *i.e.*, in *all* cases where the Court has rendered an opinion on the issue,[1] the asset freeze has been reduced to revenues on accused sales based on third-party Temu's data production in response to the Courts' TROs. To recap:

- In Case No. 23-cv-17036, the Court reduced the asset freeze to revenues on accused sales; the parties' agreed order therein used the revenue amounts from third-party Temu's data. *See* ECF No. 63.

- Following the foregoing decision, Roadget agreed to reduce the asset freeze in Case No. 23-cv-16262 to revenues on accused sales, again based on the revenue amounts from third-party Temu's data. *See* ECF. Nos. 60-61.

- In Case No. 24-cv-115, Judge Bucklo reduced the asset freeze to revenues on accused sales based on third-party Temu's data. She ordered this relief after

---

[1] The parties have recently completed briefing on this issue in Case No. 24-cv-3139. *See, e.g.*, ECF Nos. 40, 54, 82-84. In Case No. 24-cv-1174, the Court has not yet issued a TRO.

full briefing by the parties (and a motion for reconsideration in which Defendants proffered a custodial declaration by Temu's counsel authenticating and substantiating Temu's data).  *See* ECF No. 84.

- In Case No. 24-cv-607, Judge Jenkins reduced the asset freeze to revenues on accused sales based on third-party Temu's data, including Defendants' proffer of a custodial declaration by Temu's counsel authenticating and substantiating Temu's data production.  She ordered this relief after full briefing by the parties (and rejected Roadget's request for discovery into merchants' records).  In her finding, Judge Jenkins stated "that reducing the asset freeze to the amount of sales of allegedly infringing products is sufficient to protect Plaintiff's ability to recover the funds it is entitled to via an equitable remedy without subjecting Defendants to an overbroad injunction."  *See* ECF Nos. 69, 77.

- In Case No. 24-cv-2015, Judge Coleman reduced the asset freeze to the total revenue generated from the accused products, as reflected in third-party Temu's data (authenticated and substantiated by a custodial declaration from Temu's counsel) when she extended the TRO as to appearing defendants.  *See* ECF No. 64.

- Lastly, in Case No. 24-cv-2536, Judge Durkin reduced the asset freeze to revenues on accused sales after ordering the parties to reach an agreement, utilizing third -party Temu's data.  *See* ECF Nos. 42-43.

Yet none of the foregoing Court decisions (the latest of which occurred two weeks prior to Plaintiff's request for a full asset freeze in this case, ECF Nos. 11-12) has deterred Plaintiff from wasting judicial and party resources by utilizing the same strategy—demanding an overbroad freeze on *all* financial accounts ostensibly "connected to" the defendants, despite knowing reliable evidence of Defendants' accused sales is readily available. Specifically, Plaintiff moved *ex parte* for the Court to enter a Temporary Restraining Order ("TRO") on June 13, 2024. ECF Nos. 11-12. Defendants' sales revenue derived from the accused activity, of which only the associated profit is potentially recoverable by Plaintiff by way of disgorgement, are much smaller than the total dollar amounts in the accounts frozen by the TRO— indeed, as of June 22, the asset freeze had captured over 4 times revenues on accused sales (for Defendant No. 9, the freeze represents 76 times revenues on accused sales):

| No. | Store Name | Sales Revenue on Accused Products[2] | Frozen amount (as of June 22, 2024) |
|---|---|---|---|
| 1 | Yohad | $31,118.22 | $538.77 |
| 2 | VolcanoPJ | $3,478.81 | $25,781.7 |
| 4 | Happy Sleeping | $1,049.53 | $2,893.25 |
| 5 | AINK | $1,410.09 | $3,677.1 |

---

[2] As of June 22, 2024, the amounts frozen for Defendant Nos.1 (Yohad), 13 (jin Wang), and No.15 (Shenghong Pajama Clothing Store) were lower than their revenues on accused sales. The freeze for these Defendants would, under the relief requested herein, remain in effect until such time as frozen assets match revenues on accused sales.

| 9 | UNYS | $2,287.67 | $175,474.24 |
|---|---|---|---|
| 11 | The One Queen | $638.2 | $9,378.07 |
| 12 | TMsyfzc | $453.93 | $4,099.64 |
| 13 | jin Wang | $940.73 | $306.04 |
| 14 | March th | $3,097.17 | $5,436.24 |
| 15 | Shenghong Pajama Clothing Store | $8,452.81 | $6,023.18 |
| 16 | MOKAJUN | $1,515.13 | $5,786.63 |
| | **Total** | **$54,442.29** | **$239,394.86** |

Casaceli Decl. at Exhibit A, Sheets 1 & 2, attached hereto as Exhibit A; Store Owner Decls., attached hereto as Exhibit B.

While an asset freeze may only restrain monies subject to Plaintiff's request for an equitable remedy, *i.e.*, disgorgement of Defendants' profits (*see, e.g.*, ECF No. 1 at 11, Prayer for Relief ¶ 4), the asset restraint in this case restrains all funds received by Defendants, including those for ongoing unaccused sales, accentuating the harm to Defendants and their ability to operate their businesses. Defendants have ceased sales of the product referenced in compliance with the TRO, but the amounts frozen in their respective accounts have been and will continue to increase as revenue is realized from sales of un-accused products. The harm to Defendants due to the

indefinite asset freeze is extensive. Accordingly, equity warrants the asset restraint be reduced.

Finally, before filing this Motion, Defendants asked Plaintiff to stipulate to the requested relief. Plaintiff refused, necessitating this Motion.

**ARGUMENT**

I. **The Asset Restraint Must Be Limited to No More Than Revenues on Accused Sales.**

"[D]istrict courts generally do not have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment." *Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) (citing *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 331 (1999)). An exception exists for equitable remedies under 15 U.S.C. § 1117(a), but the scope "must be limited only to what is reasonably necessary to secure the (future) equitable relief." *Id*. When the asset freeze issued is "too broad, the [opposing party] may file challenges to the scope of the TRO by submitting evidence that some or all of the money has other sources." *Deckers*, 2013 WL 12314399, at *2. When presented with such evidence, courts are quick to modify the TRO.[3] *See Awareness Ave. Jewelry LLC v. Partnerships &*

---

[3] To avoid the equitable result of an asset freeze reduction for Defendants, Plaintiff undoubtedly will respond (without factual basis) that possible infringement exists beyond the

6

*Unincorporated Associations Identified on Schedule "A,"*, No. 8:23-cv-2-TPB-AAS, 2023 WL 3568387 (M.D. Fla. May 19, 2023) (granting motion to modify asset restraint in preliminary injunction, when the defendants submitted evidence that their profits from the accused activity was minimal); *see also S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005) (holding that the plaintiff's burden as to the assets subject to disgorgement, and therefore available for a freeze, was a reasonable approximation of the defendant's ill-gotten gains). Defendants have met this burden with the Casaceli declaration, corroborated by the merchants' declarations, which demonstrate the (limited) scope of revenues attributable to accused sales. They request the Court act in equity to reduce the asset freeze accordingly.

As the declarations of Defendants' principals explain and as the above chart illustrates, the asset restraint curbs withdrawal of any funds from Defendants' accounts, regardless of whether they derive from lawful sales, allegedly ill-gotten gains, or from future income. *See, e.g.,* Ex. B Feipeng Luo Decl. ¶ 16, Congyan Zhu Decl. ¶ 16, Qimeng Xu Decl. ¶ 16, Na Liu Decl. ¶ 16, Xiaoli Wu Decl. ¶ 16, Jun Zhou Decl. ¶ 16, Shaobing Li Decl. ¶ 16, Shiling Wang Decl. ¶ 16, Hengjun Wang Decl. ¶

---

scope of its Complaint. But any suggestion by Plaintiff that there *may* be other potentially infringing products, other than the identified accused products, "without more, cannot overcome Defendants' evidence that most of the frozen funds are not related to the supposedly infringing products." *Roadget Business PTE LTD. v. Individuals, Corporations, etc.*, Case No. 1:24-cv-02015 (Mar. 8, 2024, J. Coleman), ECF No. 64.

16, Yuluo Zhang Decl. ¶ 16, and Zixue Guo Decl. ¶ 16. As of June 22, there is a total of $239,394.86 restrained in the accounts due to this case. *See* Exhibit A at Sheets 1 & 2; Exhibit B. In contrast, the sales revenue related to the accused items is only $54,442.29. *See id*. In other words, the amount frozen is more than four times higher than the actual revenue from the accused products. As Judge Jenkins found in Case No. 24-cv-607 in granting the defendants' motion to reduce the asset restraint, the revenues generated from the sales of the accused products should be "sufficient to protect Plaintiff's ability to recover whatever amount that it believes to be entitled to through any equitable remedy." *Roadget Business Pte. Ltd. v. The Individuals, Corporations, etc.*, 1:24-cv-00607, ECF No. 69.

Because the law limits an asset restraint to what is recoverable in equity, that is, no more than Defendants' accused profits, Defendants' request that the Court modify the asset freeze to capture only revenues on accused sales (*i.e.*, profits had there been no deductible costs), furthers the principles of equity for both parties—it insures the Plaintiff's potential recovery of profits while also insuring the Defendants' ability to continue their other business activities.

To allow a broader freeze would wreak havoc on Defendants by immobilizing the entire balances of their stores—reaching even gross revenues from unrelated, unaccused goods. This is an unwieldly, improvident, and inequitable method for arresting funds. It also disregards the prospective aspect of an asset restraint. Current and future unaccused proceeds earned by the Defendants are rendered out of

8

reach due to the restraint. And without this Court's ruling in favor of Defendants, the harm to Defendants will continue for as long as the litigation lasts, if Roadget is granted a preliminary injunction upon the expiry of the TRO[4]. This is the antithesis of "minimizing hardship."

## II. Modifying The Asset Restraint Is Necessary Because Any Further Delay Will Unjustly Cause Defendants Irreparable Harm.

Standards for issuing temporary restraining orders and preliminary injunctions are the same. *See Village of Orland Park v. Pritzker*, 475 F.Supp.3d 866, 878 (N.D. Ill. 2020). A preliminary injunction is a "drastic" remedy, one that should not be granted unless the movant clearly carries the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Additionally, a preliminary injunction should be tailored to the violation. *Commodity Fut. Trading Comm. v. Lake Shore Asset Mgmt. Ltd.*, 496 F.3d 769, 772 (7th Cir. 2007). The purpose of preliminary injunctive relief is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Those principles embody the propriety of an asset restraint modification under the TRO here.

Defendants' stores, businesses, and their assets have been restrained since the TRO. Not surprisingly, Defendants' liquidity, not to mention their ability to continue

---

[4] In all of the recent similar cases brought by Roadget where the Court granted a TRO against the Defendants, Roadget has, without exception, moved for preliminary injunction. *See* Nos. 23-cv-16262, 23-cv-17036, 24-cv-115, 24-cv-607, 24-cv-2015, 24-cv-2536, 24-cv-3139.

operations, has been stymied. *See, e.g.*, Ex. B Feipeng Luo Decl. ¶ 20, Congyan Zhu Decl. ¶ 20, Qimeng Xu Decl. ¶ 20, Na Liu Decl. ¶ 20, Xiaoli Wu Decl. ¶ 20, Jun Zhou Decl. ¶ 20, Shaobing Li Decl. ¶ 20, Shiling Wang Decl. ¶ 20, Hengjun Wang Decl. ¶ 20, Yuluo Zhang Decl. ¶ 20, and Zixue Guo Decl. ¶ 20. In fact, the funds represent Defendants' lifeline, now severed. This epitomizes "irreparable harm." *See Win Win Aviation, Inc. v. Richland Cnty., S.C. Sheriff's Dep't*, No. 15-c-50051, 2015 WL 1197534 at *4 (N.D. Ill. Mar. 16, 2015) ("if plaintiff's business was no longer able to continue as a result . . . that would qualify as irreparable harm."); *see also, Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) (finding irreparable harm where "it is likely that all of that part of the carrier's business will evaporate, even if it does other things elsewhere," and "at the very least[,] a loss of customer goodwill" will result based on inability to transact with customers). It would thus be injurious to continue denying Defendants access to their revenue derived from lawful sales of products unrelated to the current litigation. And irreparable harm will persist if the onerous injunction is left intact. With $239,394.86 restrained in Defendants' accounts as of June 22 (over four times revenues on accused sales) and their future incomes continuing to be restrained, Defendants are irreparably harmed as a matter of law. *See* Exhibit A, Exhibit B, and chart, *supra*. Such inequity should give the Court pause, as it has done for every Court that has addressed the issue in the related Roadget Schedule A cases.

## CONCLUSION

The asset restraint improperly suspending Defendants' accounts and holding their business in abeyance should be modified to restore equity. The asset restraint should thus be reduced to the sales revenue related to the accused items, as set forth in the chart herein.

WHEREFORE, Defendants Nos.1, 2, 4, 5, 9, 11, 12, 13, 14, 15, and 16, correspondingly, Yohad, VolcanoPJ, Happy Sleeping, AINK, UNYS, The One Queen, TMsyfzc, jin Wang, March th, Shenghong Pajama Clothing Store, and MOKAJUN, respectfully request the Court enter an order granting their Motion to Modify by limiting the assets frozen to Defendants' sales revenues derived from of the accused activities, as shown in the spreadsheet disclosed by the third-party Temu (Exhibit A) and the above chart, and for any further relief the Court deems appropriate.

July 8, 2024            Respectfully submitted,

<u>s/ Christopher Keleher</u>
The Keleher Appellate Law Group, LLC
1 E. Erie St., Suite 525
Chicago, IL 60611
312-448-8491
ckeleher@appellatelawgroup.com

Lan Li

Anchor Law LLC
1 E. Erie St., Suite 525
Chicago, IL 60611
312-718-6573
lan.li@anchorlawllc.com

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 8, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all counsel of record.

Respectfully submitted,

s/ Christopher Keleher

Christopher Keleher

The Keleher Appellate Law Group, LLC

1 East Erie Street

Suite 525

Chicago, IL 60611

312-448-8491

ckeleher@appellatelawgroup.com